Granger, C. J.
We are satisfied with the finding and decree of the district court. Although no description, or plat, was actually attached to the copy of the contract of 1855, when handed to Day, that copy recited that such papers were attached to it; and pin holes in its upper left hand margin indicated how the attachment had been made. Day was told-that Brainard knew of no plat, or description ; and was referred to the engineer’s office. He was not told that Brainard had any knowledge of the contract when made; he appeared to Day solely as the incumbent of an office containing the files in which the paper was found. "We find no evidence tending to show any misrep-, resentation, or any intent to deceive Day. They told him, —as did the paper, — that the railway company had bought a right of way across said premises, and that he could see what they had got. He could see a space about fifty feet wide; through it, near the centre, ran the main track complete ; also a side track partly completed. No building trenched upon this space except about four feet of the worn-out frame lime house. It is not probable that either Kent or Brainard imagined that Day would understand these words, “ you can see what they have got,” as referring only to the ground covered by the cross-ties, or included between the sides of the rock cut. Necessarily a right of way includes more space than is covered by the cross-ties. The cars require more than that for their passage; the track needs drains; ties and rails decay or wear out; the old ones must be removed, and new ones must take their places. Pending such work the material must lie alongside the track, beyond the drain. Workmen must have passage way to and fro, outside of drains. The possession by the railway company included not only the ground covered by the cross-ties, and within the walls of the cuts, but also so much of the vacant ground on both sides of the tracks, as *398 was reasonably necessary for operating aiid maintaining the railway in the customary mode. The possessor of a dwelling house also possesses its curtilage; the operator of a factory holds also the means of ingress and egress, and such adjacent ground within the same premises as is required for deposit of material, or waste. The holder of a farm possesses not only the ground covered by the farm buildings or cultivated by his plows, but the pastures and the woodland of the farm.
The second * paragraph of the syllabus in Williams v. Sprigg, 6 Ohio St., 585, holds thus: “ Constructive notice of a prior equity, arising from the use and occupation of land, must, to charge a subsequent purchaser, be communicated by such acts as can be readily seen and understood— by something so tangible in form as to induce inquiry about the ownership and extent of the right thus to occupy.” Under this doctrine, if Day had learned nothing from either Brainard or Kent, the use of the track as laid, (there being no evidence of possession hostile to the railway except the buildings themselves,) would have been notice to him that the company held a right of way for their railway in those premises. His mistake was in supposing it notice only of a right to keep the two tracks there. In law, such “ right of way ” included, as already shown, the free use of so much ground upon both sides of those tracks as was required for the convenient and customary use and maintenance of the railway, not exceeding the space plainly in possession of the factory owners by their buildings and appurtenances.
In addition to this notice, Day was expressly told that it was a right of way valued at four-ninths of the entire premises and calling for the removal of buildings by the factory owners ; that its limits were defined by a plat, and that the railway civil engineers were the proper, and probable, custodians of the plat. Placing upon the facts the construction most liberal towards Day, that can reasonably be applied, — those facts, as known to him, showed that the limits of the right of way were somewhere between the outer ends of the cross-ties and the walls of the factories. *399 He was content to complete his purchase without asking where those limits were.
The fact that the railway company did not prevent Day, Williams & Co. from quarrying and using the stone lying in the rocky bed of the right of way, could not, and did not, deprive it of any right in the remaining rock, or in the way.
' The extension of the track complained of will not interfere with any structure that stood on the land in July, 1864, or that has been built since. The railway company has made no attempt to interfere with any of the erections of Day, Williams & Co; and, so far as the record shows, has no wish or intent to do so. The judgment of the district court is therefore

Affirmed.